## IN THE CIRCUIT COURT FOR HENRICO COUNTY, VIRGINIA

Bio-Tek Services, Incorporated )
    5310 South Laburnum Ave. )
    Richmond, VA 23231 )
                              )
                     Plaintiff, )
                              )
v. )  Case No: *CL12-401*
                              )
James Alan Overton, Jr. )
c/o Pharma Matrix, Inc. )
6506 Sid Road )
Lucama, NC 27851 )
                              )
Pharma Matrix, Inc. )
Serve: Kevin B. Phillips, registered agent )
6506 Sid Road )
Lucama, NC 27851 )
                              )
                 Defendants. )

> **EXHIBIT**
>
> A

### COMPLAINT

Bio-Tek Services, Incorporated ("Plaintiff"), by counsel, states as follows for its Complaint against James Alan Overton, Jr. ("Overton") and Pharma Matrix, Inc. ("PM").

### I.    INTRODUCTION

1.    Plaintiff asserts claims against Overton for breach of contract, breach of fiduciary duty, computer trespass, defamation, misappropriation of trade secrets, and business conspiracy. Plaintiff asserts claims against Pharma Matrix for tortious interference and business conspiracy.

### II.    THE PARTIES

2.    Plaintiff is a Virginia corporation with offices located at 5310 South Laburnum Avenue, Richmond, VA 23231.

1

3.      Plaintiff is a metrology company that is a leading supplier of calibration services, serving the pharmaceutical, biotech, educational, and industrial markets.

4.      Overton is a former employee of Plaintiff who at the time of his resignation resided at 3124 Brook Blvd., Quinton, VA 23141.

5.      Overton's current address is unknown and is believed to be in or near Wilson, North Carolina.   On information and belief Overton is employed by PM which is located at6506 Sid Road, Lucama, NC 27851.

6.      PM is a North Carolina corporation with offices located at 6506 Sid Road, Lucama, NC 27851.

7.      PM is a licensed engineering company involved in the conception, planning, design, construction, startup and commissioning of pharmaceutical and biotech facilities.

### III.      JURISDICTION AND VENUE

8.      The Court has jurisdiction over this matter pursuant to Va. Code §8.01-328.1.A(1).

9.      Venue in this Court is proper under Va. Code §8.01-262(1).

### IV.      FACTS

Overton's Employment Agreement and Resignation

10.      Prior to commencing work for Plaintiff, Overton was previously employed in the metrology program of a biopharmaceutical company in North Carolina.

11.      Overton is experienced in providing metrology, validation, and calibration services and was hired by Plaintiff on July 5, 2011.

12.      Plaintiff hired Overton as a service technician, and Plaintiff encouraged and expected Overton to assume additional responsibilities.

13.      Overton executed and delivered the employment contract attached as Exhibit A (the "Employment Agreement.")

14.      Plaintiff paid $3,439.20 in moving expenses to move Overton and his family to Richmond to work for Plaintiff.

15.      Section 7(a) of the Employment Agreement prohibits Overton from

2

directly or indirectly competing with Plaintiff within the territories listed on Exhibit C of the Employment Agreement, which include North Carolina, during his employment by Plaintiff and for two (2) years following the last day of his employment.

16. Section 7(b) of the Employment Agreement prohibits Overton from directly or indirectly competing with any facet of Plaintiff's business in which Overton engaged prior to termination of employment, and from any facet of Plaintiff's business about which Overton acquired proprietary or confidential information during the course of his employment.

17. Section 7(c) of the Employment Agreement provides that competition includes being an employee of an entity that directly or indirectly competes with Plaintiff.

18. On or about October 12, 2011, Overton resigned from Plaintiff by leaving the document attached as Exhibit B on his desk (the "Resignation Letter").

19. In his resignation letter Overton demanded to be released from the non-compete provisions of his Employment Agreement. Overton repeated this demand in a subsequent email to Plaintiff's owner, Mr. Parker Carwile, saying "You should have NEVER done this to my family." Exhibit C.

20. Subsequent to resigning from Plaintiff, Overton became employed by PM.

Employee Loan

21. On or about June 17, 2011 Plaintiff wrote a check for $1200.00 to ERA Woody Hogg to pay the security deposit for the home being rented by Overton (the "Security Deposit"). See Exhibit D. Overton told Plaintiff he would re-pay the security deposit when he received the return of his security deposit from the home he previously rented in North Carolina.

22. On or about September 30, 2011, just twelve (12) days before Overton's abrupt resignation, Plaintiff provided an employee loan to Overton in the amount of $4,700.00. See Exhibit E (the "Loan.") The Loan required repayment of $125.00 per payroll period.

23. Since there are no more payroll payments for Overton Plaintiff has demanded immediate repayment of the Loan and the Security Deposit and Overton has failed to re-pay the amounts owed to Plaintiff in full. The Loan and the Security Deposit

3

are now due and payable in full.

24.     The remaining combined balance of the Loan and Security Deposit is $5275.

Computer Trespass

25.     Overton was not given carte blanche authority to access all information contained on Plaintiff's computer system.

26.     After Overton resigned Plaintiff examined Overton's company issued computer.   The examination revealed that Overton had accessed financial and management areas of Plaintiff's computer system that were not relevant to Overton's employment.

27.     The information accessed by Overton derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

28.     The information accessed by Overton is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

29.     Overton was not authorized to and acted without authority in accessing such information by improper means.

30.     The examination further revealed that Overton deleted his email records, making it impossible to review Overton's communications.

31.     The deletion of Overton's email and other computer records constituted damage to Plaintiff's computer system.

32.     Overton responded (through PM's attorney) to Plaintiff's demand for a return of all information taken by Overton, including but not limited to all information referred to by Overton in the Resignation Letter where Overton states "I have **documented these concerns in detail**" that Overton did not actually take any information and does not have anything to return.

33.     Overton further responded that he only has modest computer skills and would not know how to delete email files from a computer.

4

Defamation

34.     In an email to many of Plaintiff's employees Overton repeats the allegation that he has obtained compromising information about the company and threatens to reveal his documented concerns. Exhibit F.

35.     Overton has never explained what "this" is that he refers to in his threatening email.

36.     The statements made by Overton are false and damage and impugn the integrity of Plaintiff in its business. Such statements potentially cause irreparable and immeasurable harm to Plaintiff's reputation.

37.     During the time Overton was employed by Plaintiff, PM's President, Mr. Kevin Phillips, visited Overton at Plaintiff's facility and Overton gave Phillips a tour of Plaintiff's facility.

38.     On information and belief Mr. Phillips has known Overton since Overton was in high school.

39.     On information and belief at least some of PM's pharmaceutical and biotech facility clients require third party calibration services.

40.     On information and belief PM's validation services are similar to calibration services and PM may expand into providing calibration services.

41.     On information and belief at least some companies provide both calibration and validation services.

42.     On information and belief Overton and PM conspired to obtain access to Plaintiff's proprietary information and to use such information in PM's business to compete with Plaintiff in violation of the Employment Agreement.

## IV.     CAUSES OF ACTION

### Breach of Contract – Employment Agreement

43.     Plaintiff incorporates paragraphs 1- 42 as though fully set forth herein.

44.     Overton is in breach of the Employment Agreement by virtue of being currently employed by PM.

## Breach of Contract – Loans

45.   Plaintiff incorporates paragraphs 1- 44 as though fully set forth herein.

46.   Plaintiff has called due and demanded immediate repayment of the Loans.

47.   Overton has not repaid the Loans.

48.   The unpaid amount of the Loans is $5275.

## Breach of Fiduciary Duty

49.   Plaintiff incorporates paragraphs 1- 48 as though fully set forth herein.

50.   During the time he was employed by Plaintiff Overton owed a fiduciary duty to Plaintiff. On information and belief during Overton's period of employment he conspired with PM to misappropriate proprietary information of Plaintiff and to breach the non-compete provisions of his Employment Agreement.

51.   Through the acts described above Overton breached the fiduciary duty owed under Virginia law by an employee to his employer.

## Computer Trespass

51.   Plaintiff incorporates paragraphs 1- 50 as though fully set forth herein.

52.   Through the acts described above Overton violated Virginia Code Section 18.2-152.4, and pursuant to Virginia Code Section 18.2-152.12 is liable for civil relief, including but not limited to the costs of suit and damages including but not limited to lost profits.

## Defamation

53.   Plaintiff incorporates paragraphs 1- 52 as though fully set forth herein.

6

54.    By circulating a false and malicious communication to Plaintiff's employees impugning Plaintiff's integrity, Overton per se defamed Plaintiff.

## Misappropriation of Trade Secrets

55.    Plaintiff incorporates paragraphs 1- 54 as though fully set forth herein.

56.    Through the acts described above Overton violated the Virginia Uniform Trade Secrets Act, § 59.1-336, et. seq.

## Business Conspiracy

57.    Plaintiff incorporates paragraphs 1- 56 as though fully set forth herein.

58.    On information and belief Overton and PM have worked together to gain access to and unlawfully misappropriate proprietary information of Plaintiff. The misappropriation of this information and the access to and use of this information by PM have caused and will cause damage to Plaintiff in amounts to be determined at trial.

## Tortious Interference with Contract

59.    Plaintiff incorporates paragraphs 1- 57 as though fully set forth herein.

60.    On information and belief PM, through Mr. Kevin Phillips, was aware of Overton's employment by Plaintiff.

61.    On information and belief PM intentionally induced Overton to resign from his employment with Plaintiff, and thereby interfered with Plaintiff's contractual relationship with Overton.

62.    On information and belief PM intentionally and improperly caused Overton to resign from his employment with Plaintiff.

63.    The tortious interference with Plaintiff's employment contract with Overton has damaged and will continue to damage Plaintiff in an amount to be determined at trial.

## VI.    REMEDIES

WHEREFORE, Plaintiff prays for an order and judgment against the Defendant:

A.    Breach of Contract – Employment Agreement. Plaintiff requests that this court:

   a.  enjoin Overton from any further and continuing breach of the Employment Agreement for two (2) years from the entry of such order;

   b.  award Plaintiff all damages suffered as a result of Overton's breach of the Employment Agreement in an amount to be determined at trial, including but not limited to repayment of $3,439.20 incurred to move Overton and his family to Virginia; and

   c.  require Overton to pay all costs, expenses, and reasonable attorney's fees incurred by Plaintiff in enforcing the Employment Agreement.

B.    Breach of Contract – Loan: Plaintiff requests this court order Overton to pay all principal and interest owed to Plaintiff under the loan agreement, as determined at trial;

C.    Breach of Fiduciary Duty: Plaintiff requests this court order Overton to pay to Plaintiff $80,000 or such amount as the court determines at trial to be just in compensation for Overton's breach of fiduciary duty;

8

D.     Computer Trespass: Plaintiff requests this court order Overton to pay to Plaintiff $80,000 or such amount as the court determines at trial to be just in compensation for Overton's violation of the Virginia Computer Trespass Act.

E.     Defamation: Plaintiff requests this court order Overton to pay to Plaintiff $80,000 or such amount as the court determines at trial to be just in compensation for Overton's defamatory statements.

F.     Misappropriation of Trade Secrets: Plaintiff requests this court enjoin Overton from any distribution or use of Plaintiff's proprietary information and require Overton to pay to Plaintiff $80,000 or such amount as the court determines at trial to be just in compensation for Overton's violation of the Virginia Trade Secrets Act.

G.     Business Conspiracy: Plaintiff requests this court enjoin Overton and PM from any distribution or use of Plaintiff's proprietary information and require Overton and PM to pay to Plaintiff $80,000 or such amount as the court determines at trial to be just in compensation for Overton's and PM's violation of Code of Virginia Section 18.2-499 and 18.2-500.

H.     Tortious Interference with Contract: Plaintiff requests this court require PM to pay to Plaintiff $80,000 or such amount as the court determines at trial to be just in compensation for PM's tortious interference with Plaintiff's employment contract with Overton.

I.     Granting such other relief as this Court deems proper and necessary.

Trial by jury is demanded.

Respectfully submitted:

By: _____

Ian D. Titley VSB No. 27531
Angela T. Isabell VSB No.  75024
Gavin Law Offices, PLC
2500 Gaskins Road, Suite B
Richmond, Virginia 23238
Telephone:  804-784-4427
Facsimile: 804-784-4423
idt@gavinlawoffices.com
*Counsel for Plaintiff*



EXHIBIT

A

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT, made this _____ 5th ___ day of _____July____2011_____ by and between Bio-Tek Services, Incorporated (hereinafter referred to as "Bio-Tek") and James Alan Overton, Jr. (hereinafter referred to as "Employee").

## W̲I̲T̲N̲E̲S̲S̲E̲T̲ H̲:

WHEREAS, Bio-Tek is principally engage in the sale, service and calibration of pipettes and balances to it's customers, which include, but not limited to biotech, pharmaceutical, contract research, clinical research labs and various schools of medical academia and

WHEREAS, Bio-Tek has established many valuable customer and supplier contacts within its service area and has developed proprietary and confidential information concerning its customers and suppliers that is not readily available to the public and that is treated as secret and confidential; and

WHEREAS, Employee desires to continue to be employed by Bio-Tek as a service technician, which position requires that Employee contact and develop relationships with Bio-Tek customers and suppliers and /or come in contact with Bio-Tek proprietary and confidential information; and

WHEREAS, Employee will in his position as a service technician act for Bio-Tek in maintaining, improving, developing, and servicing Bio-Tek customers and suppliers, and both parties to this Agreement have recognized and do recognize that employee will be employed in a

l

position of trust and confidence in which a high fiduciary duty of loyalty on the part of Employee to Bio-Tek is created; and

WHEREAS, Employee desires his continued employment by Bio-Tek and aggress to the restrictions against competition both during and following his employment, consistent with the terms of this Agreement;

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises and agreements hereinafter set forth, Bio-Tek and Employee agree as follows:

1. **EMPLOYMENT**

Bio-Tek hereby employs Employee as service technician to render such services and perform such duties as may be determined and assigned to Employee by Bio-Tek.

2. **COMPENSATION**

As compensation while employed, Employee, during his satisfactory performance of his duties and obligations hereunder, shall be entitled to the compensation as described in their salary/commission agreement. Such compensation may be changed from time to time by the preparation of a new salary/commission agreement.

3. **LOYALTY**

a. Employee agrees to be loyal employee and to devote his best efforts full time to the performance of his duties for Employer. Employee agrees to give proper time and

2

attention to furthering Employer's business, and to comply with all rules, regulations, and policies established or issued by Employer.

b.      Employee pledges that during the term of this Agreement, Employee shall not, directly or indirectly; engage in any business that could detract from Employee's ability to apply his best efforts to the performance of his duties hereunder.  Employee further agrees to obtain prior written consent from Bio-Tek before engaging in any other occupation, and he agrees to refrain from taking advantage of any corporate opportunities of Bio-Tek.

4.      **NO PRIOR AGREEMENTS.**

Employee represents that he is not a party to, or otherwise subject to or bound by, the terms of any contract, agreement, or understanding which in any manner would limit or otherwise affect his ability to perform his obligations hereunder, including, without limitation, any contract, agreement, or understanding containing any provision limiting employee's right to compete with prior employer.  Employee further represents and warrants that his employment with Employer will not require the disclosure or use of any confidential information belonging to prior employers or other persons or entities.

5.      **BENEFITS**

Subject to Employee's due performance of his responsibilities hereunder and his observance of all of the requirements herein set forth, Employees shall enjoy all the benefits, if any, provided by Bio-Tek for comparably situated employees.  Bio-Tek reserves the right to modify, add or eliminate benefits as it deems appropriate.

3

6.   **TERMINATION**

Either party may terminate this Agreement and the employment contemplated herein at any time, with our without cause, and without liability for doing so, by giving the other party hereto at least fourteen (14) days prior written notice.  Bio-Tek reserves the right to require Employee not to work during the notice period but if Bio-Tek terminates this Agreement, Bio-Tek shall be obligated to pay Employee the Employee's commissions, and incentive bonuses earned as of the date of the termination of this Agreement.  Additionally, Bio-Tek may terminate this Agreement immediately, without written notice to Employee and without liability for doing so, upon the occurrence of any of the events listed in Items (a) through (f) below.  Provided, however that the provisions of this Agreement regarding non-competition shall survive any termination, voluntary or involuntary, regardless of cause, unless the parties agree in writing to the contrary.

(a)   A determination by Bio-Tek that Employee has failed to satisfactorily perform the duties of Employee as required or contemplated hereunder;

(b)   Employee is convicted of a felony or any crime involving moral turpitude or any Class I misdemeanor as provided by the laws of the Commonwealth of Virginia or any comparable municipal/county ordinance within the Commonwealth of Virginia;

(c)   Insubordination by Employee;

(d)   Dishonesty by Employee;

(e)   Any act of disloyalty, including failure to preserve and enhance the business interest of Bio-Tek as the Employee's foremost responsibility during the term hereof; and

(f)   Any act or omission which, in the opinion of Bio-Tek, is contrary to the best business interests of Bio-Tek.

4

The failure of Bio-Tek at any time to require performance by Employee of any provision expressed herein shall in no way affect Bio-Tek right to thereafter enforce such provision; nor shall the waiver by Bio-Tek of any breach of any provision expressed herein be taken or held be a wavier of any succeeding breach of any such provision or as a wavier of that provision itself. Furthermore, the Agreement shall terminate immediately if either the death or incapacity of the Employee shall render Employee incapable of carrying out Employee's responsibilities and duties as expressed herein.

7. **COVENANT NOT TO COMPETE**.

Employee acknowledges that during the course of his employment, he will acquire confidential information about Bio-Tek's business, including but not limited to, its customers, supplier, vendors and prices, and/or that he will be responsible for contacting and developing relationships with Bio-Tek's customers and suppliers. In order to protect Bio-Tek's critical interest in these relationships and information, Employee covenants as follows:

(a) Employee agrees that upon the termination of his employment by Bio-Tek for any reason specified in part (a) through (f) of paragraph six (6) of this Agreement or upon Employee's voluntary termination of his employment with Bio-Tek and for a period of two (2) years following the last day of employment, he will not, directly or indirectly, compete with Bio-Tek within Bio-Tek's territories, as those territories are defined on the attached Exhibit C.

(b) It is the specific intent of the parties that Employee shall be restricted from competing directly or indirectly with any facet of Bio-Tek business in which Employee engaged prior to the termination of employment and from any facet of Bio-Tek business

5

about which Employee acquired proprietary or confidential information during the course of his employment. This business shall include, but not be limited, to the sale, distribution, repair, calibration, or service of pipettes and balances.

(c)     Employee agrees that competition shall include, but not be limited to, engaging in competitive activity, either as an individual, as a partner, as a joint venturer with any other person or entity, or as an employee, agent, or representative of any other person or entity, or otherwise being associated in a competitive capacity with any business entity which directly or indirectly competes with Bio-Tek.

(d)     Bio-Tek and Employee have examined in detail this Covenant Not to Compete and agree that the restraint imposed upon Employee is reasonable in light of the legitimate interests of Bio-Tek, and it is not unduly harsh up Employee's ability to earn a livelihood.

## 8.   **NON-SOLICITATION OF CUSTOMERS**

Employee agrees that during his employment with Bio-Tek he shall not, directly or indirectly, solicit or attempt to solicit the trade of, or trade with, any customer or prospective customer, [an entity or person known by Employee to have received and not acted upon a proposal by Bio-Tek to become a customer of Bio-Tek] of Bio-Tek for any business purpose other than for the benefit of Bio-Tek. Employee further agrees that upon the termination of his employment by Bio-Tek for any reason specified in part (a) through (f) of paragraph six (6) of this Agreement or upon Employee's voluntary termination of his employment with Bio-Tek and for a period of two (2) years following the last day of employment, Employee shall not, directly or indirectly, solicit or attempt to solicit sales and services to or trade with any customer or prospective customer of Bio-Tek with whom Employee had contact or

6

conducted business during the term of this Agreement regarding the same or similar products or services as Employee sold or performed service to by Bio-Tek.

9.   **NON-SOLICITATION OF SUPPLIERS**

Employee agrees that during his employment with Bio-Tek, he shall not, directly or indirectly, solicit or attempt to solicit the trade of, or trade with any supplier of Bio-Tek for any business purpose other than for the benefit of Bio-Tek. Employee further agrees that for a period of two (2) years following termination of his employment, however such termination is effected, whether by Employee or Bio-Tek with or without cause, Employee shall not, directly or indirectly, solicit or attempt to solicit the trade of or trade with any supplier of Bio-Tek with whom Employee had contact or conducted business during the term of this Agreement regarding the same or similar products or services as Employee sold or traded in while employed by Bio-Tek.

10.   **NON-DISCLOUSRE OF CONFIDENTIAL INFORMATION.**

(a)   Employee agrees to hold and safeguard any information about Bio-Tek gained by Employee during the course of Employee's employment. Employee shall not, without the prior written consent of Bio-Tek, misappropriate, disclose or make available to anyone for use outside Bio-Tek's organization at any time, either during his employment or subsequent to any termination of his employment, however such termination is effected, whether by Employee or Bio-Tek, with or without cause, any information about Bio-Tek or its customers or supplier, whether or not such information was developed by Employee, except as required in the performance of Employee's duties for Bio-Tek.

7

(b)     Employee understands and agrees that any information about Bio-Tek or Bio-Tek's customers is the property of Bio-Tek and is essential to the protection of Bio-Tek's goodwill and to the maintenance of Bio-Tek competitive position and accordingly should be kept secret. Such information shall include, but not be limited to, information containing Bio-Tek sales, sales volume, sales methods, service proposals, promotional plans and strategies, pricing strategies, customers and prospective customers, customer lists, identity of key purchasing personnel in the employ of customers and prospective customers, amount or kind of customer purchases, source of supply, pricing information, computer programs, system documentation, special hardware, products hardware, related software development, manuals, formulae, processes, methods, machines, compositions, ideas, improvements, inventions, or any other records or information belonging to Bio-Tek or relating to Bio-Tek's business.

11.     **INJUNCTIVE RELIEF**.

(a)     Employee acknowledges that the remedies at law for any breach by Employee of any restrictive covenant contained in this Agreement will be inadequate and that Bio-Tek shall be entitled to injunctive relief against Employee in addition to any other remedy and damages available. Employee acknowledges that the restrictions contained herein are reasonable, but agrees that if any court of competent jurisdiction shall hold such restrictions unreasonable as to time, geographic area, activities or otherwise, such restrictions shall be deemed to be reduced to the extent necessary in the opinion of such court to make them reasonable.

8

(b)    Employee agrees that the non-competition, non-disclosure, and non-solicitation obligations contained herein shall be extended by the length of time Employee shall have been in breach of any of said provisions. Employee recognizes that the time periods included in the restrictive covenants contained herein shall begin on the date a court of competent jurisdiction enters an order enjoining Employee from violating such provisions unless good cause can be shown as to why the periods described should not begin at that time.

12.    **DISCLOSURE OF MATERIALS**.

Employee agrees that he shall promptly disclose to Bio-Tek all processes, techniques, methods, discoveries, improvements, inventions, and/or other materials made or developed by Employee in whole or in part during the period of Employee's employment that are related in any way to the business activities of Bio-Tek. Employee recognizes that all such materials shall belong to and be the sole property of Bio-Tek and Employee hereby assigns and agrees to assign all rights to such materials to Bio-Tek.

13.    **RETURN OF MATERIALS**.

Upon the termination of Employee's employment with Bio-Tek for any reason, however such termination is effected, whether by Employee or Bio-Tek, with or without cause, Employee shall promptly deliver to Bio-Tek all property, materials, documents, and copies of documents concerning Bio-Tek's operations or customers that Employee has in his possession at the time of termination. Any work performed by Employee to create, develop or improve such property, materials and/or documents shall not entitle Employee to retention thereof.

9

14.   **NON-SOLICITATION OF EMPLOYEES**.

Employee agrees that during his employment with Bio-Tek and for two (2) years following termination of Employee's employment, however such termination is effected, whether by Employee or Bio-Tek, with or without cause, Employee shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any employee of Bio-Tek to leave Bio-Tek for any reason whatsoever or hire any individual employed by Bio-Tek.

15.   **RESTRICTIVE COVENANTS OF THE ESSENCE**.

The restrictive covenants of the Employee set forth herein are of the essence of this Agreement; they shall be construed as independent of any other provision in this Agreement; and the existence of any claim or cause of action of the Employee against Bio-Tek whether predicated on this Agreement or not, shall not constitute a defense to the enforcement by Bio-Tek of the restrictive covenants contained herein.  Bio-Tek shall at all times maintain the right to seek enforcement of these provisions whether or not Bio-Tek has previously refrained from seeking enforcement of any such provision as to Employee or any other individual who has signed an agreement with similar provisions.

16.   **ASSIGNABILITY**.

The obligation of Employee under this Agreement shall continue after the termination of his employment with Bio-Tek and shall be binding on Employee's heirs, executors, legal representatives, and assigns; and shall inure to the benefit of any successor or assigns of Bio-Tek.

17. **SEVERABILITY**.

It is the intention of the parties that the provisions of the restrictive covenants herein shall be enforceable to the fullest extent permissible under the applicable law. If any clause or provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term hereof, then the remainder of this Agreement shall not be affected thereby, and in lieu of each clause or provision of this Agreement which is illegal, invalid or unenforceable, there shall be added, as a part of this Agreement, a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and as may be legal, valid, and enforceable.

18. **ATTORNEYS' FEES**.

Employee shall pay, indemnify, and save Bio-Tek harmless against all costs and expenses (including any attorneys' fees) incurred by Bio-Tek with respect to enforcement of its rights under this Agreement.

19. **ENTIRE AGREEMENT**.

This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. Any amendment of, or modification to , this Agreement shall not be valid or binding unless the same is in writing and signed by the parties hereto.

20. **CONSENT TO JURISDICTION AND VENUE**.

Employee hereby irrevocably submits to the jurisdiction of the Circuit Court of the County of Henrico, Virginia, in any action or proceeding arising out of, or relating to, this

Agreement, and Employee hereby irrevocably agrees that all claims in respect of any such action or proceeding may be heard and determined in such Court. Employee agrees that a final judgment in any action or proceeding shall, to the extent permitted by applicable law, be conclusive and may be enforced in other jurisdictions by suit on the judgment, or in any other manner provided by applicable law related to the enforcement of judgments.

21.   **JURY WAIVER**.

Employee and Bio-Tek agree that in any litigation, action or proceeding arising out of or relating to this Agreement, trial shall be to a court of competent jurisdiction without a jury. Employee and Bio-Tek irrevocably waive any right Employee or Bio-Tek may have to a trial by jury and a copy of this Agreement may be introduced as written evidence of the waiver of the right to trial by jury. Bio-Tek has not made, and Employee has not relied upon, any oral representation regarding the enforceability of this provision. Employee and Bio-Tek have read and understand the effect of this jury waiver provision.

22.   **GOVERNING LAW**.

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

12

WITNESS our seals and signatures:

05 JuL 2011
_____
Date

_____
(Employee)

5 JuLy 2011
_____
Date

By _____
Bio-Tek Services, Incorporated

City / County of Henrico
Commonwealth/State of Virginia
The foregoing instrument was acknowledged
before me this 5 day of July
20 11 by James A. Crofton II
_____
(name of person before the instrument is acknowledged)
_____
Notary Public
My commission expires: 9/30/2012

13

# EXHIBIT C

Connecticut
Delaware
Florida
Georgia
Kentucky
Maine
Maryland
Massachusetts
New Hampshire
New Jersey
New York
North Carolina
Ohio
Pennsylvania
Rhode Island
South Carolina
Vermont
Virginia
West Virginia
District of Columbia

14



EXHIBIT

B

James Alan Overton, Jr.
3124 Brook Blvd.
Quinton, VA 23141
alanoverton46@yahoo.com

Wednesday, October 12th, 20011

Parker Carwile
Bio-Tek Services, Inc.
5310 S. Laburnum Ave.
Henrico, VA 23231

Mr. Carwile:

Numerous business practices affecting my areas of responsibility and the company as a whole have influenced me to conclude that I am in an undesirable employment situation. I have **documented these concerns in detail** and have made many efforts to resolve these issues but I have not been able to achieve the desired result.

After consulting with my Family, and considerable thought, I am submitting my resignation from Bio-Tek Services, Inc. effective immediately, Wednesday, October 12th, 2011.

With this in mind, I am requesting that you release me from the non-compete agreement that is currently in place. I request that this release become effective Wednesday, October 12th, 2011. Please forward the release (as simple as a **notarized** letter stating so) or a response of denial on or before Thursday, October 13th, 2011 via UPS to my residential address as listed above. Be sure to send tracking information via e-mail (alanoverton46@yahoo.com). This should be delivered via UPS to my residence as listed above no later than Monday, October 17th, 2011.

Thanks for the opportunity, but I want this to end, here and now, and go no further.

Enclosed, you will please find my office key, and my company credit card.

Sincerely,

J. Alan Overton, Jr.

**EXHIBIT**

**C**

**Parker Carwile**

| | |
|---|---|
| **From:** | James Overton [alanoverton46@yahoo.com] |
| **Sent:** | Friday, October 14, 2011 7:41 AM |
| **To:** | Parker Carwile |
| **Subject:** | Re: Conversation |

Mr. Carwile:

Conversation can only begin when the following occurs:

With this in mind, I am requesting that you release me from the non-compete agreement that is currently in place. I request that this release become effective Wednesday, October 12th, 2011.   Please forward the release (as simple as a **notarized** letter stating so) or a response of denial on or before Thursday, October 13th, 2011 via UPS to my residential address as listed above. Be sure to send tracking information via e-mail (alanoverton46@yahoo.com). This should be delivered via UPS to my residence as listed above no later than Monday, October 17th, 2011.

Let's end this now, because I really don't want the opposite to happen. For example, if I choose to file for unemployment, I have to give reasons, and I WILL tell the truth. Parker, I don't want the truth going public. It will not happen by my doing, only by your own doing. As it stands now, only a few people know.

**"I have documented these concerns in detail..."**

One deadline has already been missed. This is no joke. You should have NEVER done this to m Family.

No threats, I am only asking you to do what's right.

Alan

**From:** Parker Carwile <parker@bioteckservices.com>
**To:** 'James Overton' <alanoverton46@yahoo.com>
**Sent:** Thursday, October 13, 2011 11:27 AM
**Subject:** Conversation

Alan,
 I cannot describe at how shocked and taken by surprise I am right now, evidently there have been some things harboring in your mind that have reached a combustion point. I am very surprised and disappointed that you have not shared anything with me (to my knowledge) that has cause you to go to this extreme. Please do me at least one favor...talk to me, give me the opportunity to help resolved whatever issue is at hand. I have a very keen interest in your well being and happiness and want strongly to keep you here at Bio-Tek Services and am completely confident that whatever it is, can be resolved to our satisfaction.

Please give me the courtesy of a conversation.

Parker

1

Date: January 31, 2012        *Branch Banking and Trust*

EXHIBIT

cobbler    D

Reference: 10000298623315:10000298624315:10000297785328

**· THIS CHECK HAS A COLORED BACKGROUND AND CONTAINS MULTIPLE SECURITY FEATURES · SEE BACK FOR DETAILS ·**

**BIO-TEK SERVICES, INC.**
5310 SOUTH LABURNUM AVE.
RICHMOND, VA 23231

BB&T
4031 SOUTH LABURNUM AVE.
RICHMOND, VA 23231

68-426/514

7361

6/17/2011

PAY TO THE
ORDER OF    ERA Woody Hogg                                  $  **1,200.00

One Thousand Two Hundred and 00/100******************************************  DOLLARS

ERA Woody Hogg
9137 Chamberlayne Rd., Suite 100
Mechanicsville, VA 23116

MEMO:    Deposit for Allan Overton Jr.                              _[signature]_
                                                            AUTHORIZED SIGNATURE

⑈007361⑈ ⑆051404260⑆000159412784⑈

---

BOFD >051409029<
2011-06-20
801139604

---

| Date | 20110620 | Account Number | 0000000159412784 |
| Amount | 120000 | CR-DR | D |
| Serial Number | 0000007361 | Transaction Link | 013251290219557420 |

**BIO-TEK SERVICES, INC.**
ERA Woody Hogg

Deposit for Allan Overton Jr.                          6/17/2011          7361

1,200.00

*loan to be repaid*

BB &T Checking        Deposit for Allan Overton Jr.                        1,200.00

Form # 513272, (REV. 10/03)

THE CHECK DEPOT • REORDER ONLINE AT WWW.CHECKDEPOT.NET OR CALL 1-800-262-6311



# *ß*io-Tek Services, Inc

ISO 9001:2008 registered and ISO/IEC 17025 accredited
5310 South Laburnum Ave., Richmond, VA 23231
804-222-5833 Fax: 804-222-5360
www.biotekcalibrations.com

Richmond, VA · Raleigh, NC · Philadelphia, PA · Baltimore, MD · Boston, MA · Indianapolis, IN · Dallas, TX · Los Angeles, CA

September 30, 2011

**Employee Loan**

This is to document an employee loan of $4700.00 to Alan Overton, Jr to be repaid in increments of $125.00 per payroll until it is paid in full.  The first payment will be on October 12, 2011.

Employee

Witness

Marie White

BB &T-Checking        Loan

2,700.00

Form # 513272, (REV. 10/03)

THE CHECK DEPOT - REORDER ONLINE AT WWW.CHECKDEPOT.NET OR CALL 1-800-825-8117

BIO-TEK SERVICES, INC.
Alan Overton, Jr.

9/13/2011        7482
2,000.00

BB &T-Checking

2,000.00

Form # 513272, (REV. 10/03)

THE CHECK DEPOT - REORDER ONLINE AT WWW.CHECKDEPOT.NET OR CALL 1-800-825-8117

EXHIBIT

F

**Marie White**

| | |
|---|---|
| **From:** | James Overton [alanoverton46@yahoo.com] |
| **Sent:** | Thursday, November 03, 2011 11:49 AM |
| **To:** | Parker Carwile |
| **Cc:** | ahren.eicher@biotekservices.com; matt.brereton@biotekservices.com; brian.flynn@biotekservices.com; tom@biotekservices.com; m.mckowen@biotekservices.com; steve.campbell@biotekservices.com; sheridan.engel@biotekservices.com; justin.wagner@biotekservices.com; shea.brown@biotekservices.com; michael.kramer@biotekservices.com; mark.sompayrac@biotekservices.com; amy.rawls@biotekservices.com; buddy.crabtree@biotekservices.com; dan.kinney@biotekservices.com; marie@biotekservices.com |
| **Subject:** | James Alan Overton, Jr. - Update |

Mr. Carwile:

As a man of word, I will only be paying you back for the personal loan that you gave me, not the costs to relocate my family and I. If you feel the need to pursue legal actions against me for the costs of relocation, then so be it. The truth will then prevail at your hands, not mine.

Based on what I know, the detailed notes, I would prefer that you not subject your organization to such legal proceedings. My legal representative recommended that I speak with the Better Busniness Bureau, as well as both law enforcement and government  agencies. If I do not, they are obligated to do so.

Additionally,

-I ask that you please release me from my non-compete agreement effective immediately.

-Thanks for the substantial pay increase offer, but I hereby decline.

You did this to yourself.

Please leave my Family and I alone,

Mr. Overton

**From:** Parker Carwile <parker@biotekservices.com>
**To:** 'James Overton' <alanoverton46@yahoo.com>
**Sent:** Wednesday, November 2, 2011 8:00 PM
**Subject:** RE: Loan repayment

Mr. Overton,
Please do, just as I have.

.
L. Parker Carwile

**From:** James Overton [mailto:alanoverton46@yahoo.com]
**Sent:** Wednesday, November 02, 2011 7:04 PM
**To:** Parker Carwile
**Subject:** Re: Loan repayment

Mr. Carwile:

I will discuss this with my attorney.

Mr. Overton
**From:** Parker Carwile <parker@biotekservices.com>
**To:** 'James Overton' <alanoverton46@yahoo.com>
**Sent:** Wednesday, November 2, 2011 2:50 PM
**Subject:** RE: Loan repayment

Mr Overton,
 Please find the attached document itemizing your owed balance. Contact me if you have any questions.

L. Parker Carwile

---

**From:** James Overton [mailto:alanoverton46@yahoo.com]
**Sent:** Monday, October 31, 2011 10:17 PM
**To:** Parker Carwile
**Cc:** marie@biotekservices.com
**Subject:** Re: Loan repayment

Mr. Carwile:

Please itemize at how the amount owed was calculated.

Thank you,

Alan Overton

**From:** Parker Carwile <parker@biotekservices.com>
**To:** 'James Overton' <alanoverton46@yahoo.com>
**Cc:** marie@biotekservices.com
**Sent:** Monday, October 31, 2011 10:58 AM
**Subject:** Loan repayment

Mr. Overton,
I am in receipt of your loan payment 0f $125, thank you. I do need to inform you that since you are no longer an employee of Bio-Tek Services, Inc The privilege and employee benefit of an interest free loan is no longer available or extended to you. Payment in full is required.

amount: 8858.40
payment: -125.00
balance: 8733.40

I am open to negotiate payment terms, but in order to do that, you will need to be in communication with me.

L. Parker Carwile
**Bio-Tek Services, Inc**
5310 South Laburnum Ave
Richmond, VA 23231
804-222-5833 Fax: 804-222-5360
www.biotekservices.com

2

# COMMONWEALTH OF VIRGINIA



### HENRICO CIRCUIT COURT
Civil Division
4301 PARHAM ROAD
RICHMOND  VA
(804) 501-4546

Proof of Service

Virginia:
In the HENRICO CIRCUIT COURT

Case number: 087CL12000407-00
Service number: 002
Service filed: February 10, 2012
Judge:

Served by: SPECIAL PROCESS SERVER
Style of case: BIO-TEK SERVICE INC vs JAMES ALAN OVERTON JR

Service on: JAMES ALAN OVERTON JR
C/O PHARMA MATRIX INC
6506 SID ROAD
LUCAMA NC 27851

Attorney: TITLEY, IAN D
2500 GASKINS ROAD #B
RICHMOND VA 23238

Instructions:   WITH ATTACHMENTS

Returns shall be made hereon, showing service of Summons issued Tuesday, February 14, 2012 with a copy of the Complaint filed Friday, February 10, 2012 attached.

Hearing date  :
Service issued: Tuesday, February 14, 2012

For Sheriff Use Only

RECEIVED

MAR 0 9 2012

CLERKS OFFICE
HENRICO CIRCUIT COURT

## *PROOF OF SERVICE*

***This Summons and Complaint for (James Alan Overton Jr., C/O Pharma Matrix Inc.), was received by me on(date)*** *2/29/12* .

   ☑ *I personally served the summons and complaint on James Alan Overton Jr. at (place)* _6506 Sid Rd. Lucama, N.C._ *on(date)* ___3/2/12___ *; or*

   ☐ *I left the summons and complaint at the individual's residence or usual place of abode with (name)*_____, *a person of suitable age and discretion who resides there, on(date)*_____, *and mailed a copy to the individual's last known address ; or*

   ☐ *I served the summons and complaint on( name of individual)* _____, *who is designated by law to accept service of process on behalf of( name of organization)* _____ *on (date)*_____ *;or*

   ☐ *I returned the notice unexecuted because* _____

   ☐ *Other(specify)*

***My fees are $*** _.00_ ***for travel and $*** _0.00_ ***for service, for a total of $*** _Paid_

***Date:*** _3·2·12_      _Barrett Butler_
                                   *Server's Signature*

                                _Barrett Butler/ Owner_
                                *Printed name and Title*

                 _13920 Bellamy Mill Rd Whitakers, NC 27891_
                          *Servers' Address*

***Additional information regarding attempted service, etc;***

Sworn to and subscribed before me
this 2nd day March, 2012
Mary Butler Tetterton

MARY BUTLER TETTERTON
NOTARY
MY COMMISSION EXPIRES 2/8/2016
PUBLIC
HALIFAX COUNTY, NC

# COMMONWEALTH OF VIRGINIA



### HENRICO CIRCUIT COURT
Civil Division
4301 PARHAM ROAD
RICHMOND  VA
(804) 501-4546

Proof of Service

Virginia:
In the HENRICO CIRCUIT COURT

Case number: 087CL12000407-00
Service number: 003
Service filed: February 10, 2012
Judge:

Served by: SPECIAL PROCESS SERVER
Style of case: BIO-TEK SERVICE INC vs JAMES ALAN OVERTON JR
Service on: PHARMA MATRIX INC
       SERVE: KEVIN B PHILLIPS
       REGISTERED AGENT
       LUCAMA NC 27851

Attorney: TITLEY, IAN D
2500 GAKSINS ROAD #B
RICHMOND VA 23238

Instructions:  WITH ATTACHMENTS

Returns shall be made hereon, showing service of Summons issued Tuesday, February 14, 2012 with a copy of the
Complaint filed Friday, February 10, 2012 attached.

Hearing date  :
Service issued: Tuesday, February 14, 2012

For Sheriff Use Only

# RECEIVED
MAR 0 9 2012
CLERKS OFFICE
HENRICO CIRCUIT COURT

## *PROOF OF SERVICE*

*This Summons and Complaint for (Kevin Phillips, Registered Agent: Pharma Matrix Inc.), was received by me on(date)* *2/29/12* *.*

☑ *I personally served the summons and complaint on Kevin Phillips. at (place)* *6506 Sid Rd. Lucama, N.C.* *on(date)* _____*3/2/12*_____ *; or*

☐ *I left the summons and complaint at the individual's residence or usual place of abode with (name)_____, a person of suitable age and discretion who resides there, on(date)_____, and mailed a copy to the individual's last known address ; or*

☐ *I served the summons and complaint on( name of individual) _____, who is designated by law to accept service of process on behalf of( name of organization) _____ on (date)_____ ;or*

☐ *I returned the notice unexecuted because _____*

☐ *Other(specify)*

*My fees are $____.00____ for travel and $____0.00_____ for service, for a total of $_Paid_____*

*Date:* *3 2-12*_____          _____
                                           *Barrett Butler*
                                           *Server's Signature*

                                           _____
                                           *Barrett Butler/ Owner*
                                           *Printed name and Title*

                              *13920 Bellamy Mill Rd Whitakers, NC 27891*
                                      *Servers' Address*

*Additional information regarding attempted service, etc;*

Sworn to and Subscribed before me
this 2nd day of March, 2012
Mary Butler Fetterton

MARY BUTLER FETTERTON
NOTARY
MY COMMISSION EXPIRES
2/6/2016
PUBLIC
HALIFAX COUNTY, NC